No. 25-20457

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE FIFTH CIRCUIT

---

SARAH BORCHGREVINK, Solely in her capacity as Independent
Administrator of the Estate of Matthew Ryan Shelton, Deceased;
MARIANNA RUTH THOMSON, Statutory Wrongful Death
Beneficiary of Matthew Ryan Shelton, Deceased,
Plaintiffs – Appellees

v.

SHERIFF ED GONZALEZ,
Defendant – Appellant.

---

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:23-cv-3198, the Honorable George C. Hanks, Jr. presiding.

---

## BRIEF OF APPELLANT ED GONZALEZ

---

SUBMITTED BY:

**ATTORNEY-IN-CHARGE:**

**GREGORY BURNETT**
Assistant County Attorney
State Bar No. 24057785
Fed. Bar No. 3785139
Tel: (713) 274-5224 (direct)
gregory.burnett@harriscountytx.gov
**Office of The Harris County**
**Attorney**
1019 Congress
Houston, Texas 77002

**Attorney For Defendant-Appellant**
**Sheriff Ed Gonzalez**

January 14, 2026.

No. 25-20457

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE FIFTH CIRCUIT

---

SARAH BORCHGREVINK, Solely in her capacity as Independent
Administrator of the Estate of Matthew Ryan Shelton, Deceased;
MARIANNA RUTH THOMSON, Statutory Wrongful Death
Beneficiary of Matthew Ryan Shelton, Deceased,
Plaintiffs – Appellees

v.

SHERIFF ED GONZALEZ,
Defendant – Appellant.

---

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:23-cv-3198, the Honorable George C. Hanks, Jr. presiding.

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so the judges of this Court can evaluate possible disqualification or recusal.

| Plaintiffs-Appellees | Counsel |
|---|---|
| Sarah Borchgrevink, Marianna Ruth Thomson | <u>Appellate and Trial Counsel:</u><br>Jeff Edwards<br>Texas Bar No. 24014406<br>jeff@edwards-law.com<br>Lisa Snead<br>Texas Bar No. 24062204<br>lisa@edwards-law.com<br>603 W. 17th Street<br>Austin, Texas 78701<br>Telephone: (512) 623-7727<br><br><u>Additional Trial Counsel:</u><br>John Flood<br>Texas Bar No. 07155910<br>john@floodtriallawyers.com<br>819 Upper Broadway<br>Corpus Christi, Texas 78401<br>Telephone: (361) 654-8877 |
| **Defendant-Appellant** | **Counsel** |
| Sheriff Ed Gonzalez | <u>Appellate and Trial Counsel:</u><br>Gregory Burnett<br>Texas Bar No. 24057785<br>Greg.Burnett@harriscountytx.gov<br>Telephone: (713) 274-5224<br>Rachel Fraser<br>Texas Bar No. 24079725<br>Rachel.Fraser@harriscountytx.gov<br>Telephone: (713) 274-5383<br>1019 Congress<br>Houston, TX 77002 |
| **Other Trial Defendants** | **Counsel** |
| Harris County, Texas | <u>Trial Counsel:</u><br>Gregory Burnett<br>Texas Bar No. 24057785<br>Greg.Burnett@harriscountytx.gov<br>Telephone: (713) 274-5224<br>Rachel Fraser |

| | |
|---|---|
| | Texas Bar No. 24079725<br>Rachel.Fraser@harriscountytx.gov<br>Telephone: (713) 274-5383<br>1019 Congress<br>Houston, TX 77002 |
| Officer Amber Bailey<br>Officer Allyson Hurd<br>Officer Dentrell Woods<br>Sergeant Bryan Collins | Trial Counsel:<br>Joshua Green<br>Texas Bar No. 24080915<br>joshua.green@harriscountytx.gov<br>Telephone: (713) 274-5229<br>Veronica Jones<br>Texas Bar No. 24097902<br>veronica.jones@harriscountytx.gov<br>Telephone: (713) 274-5181<br>1019 Congress<br>Houston, TX 77002 |
| Officer Timothy Owens<br>Officer Kalin Stanford<br>Officer Brayan Silva<br>Officer Amalia Ruiz<br>Officer Lonnie Brooks<br>Sergeant Alejandro Nieto | Trial Counsel:<br>James C. Butt<br>Texas Bar No. 24040354<br>James.butt@harriscountytx.gov<br>1019 Congress<br>Houston, TX 77002<br>Telephone: (713) 274-5133 |
| Harris County Hospital District | Trial Counsel:<br>John R. Strawn, Jr.<br>Texas Bar No. 19374100<br>jstrawn@strawnpickens.com<br>Andrew L. Pickens<br>Texas Bar No. 15971900<br>apickens@strawnpickens.com<br>700 Louisiana, Suite 4545<br>Houston, TX 77002<br>Telephone: (713) 659-9600 |

| | |
|---|---|
| Officer Charley Lauder<br>Officer Elizabeth Garcia<br>Officer Paulino Olguin<br>Officer William Russell<br>Officer Garrett Woods | Trial Counsel:<br>Ricardo J. Navaro<br>Texas Bar No. 14829100<br>Rjnavarro@rampagelaw.com<br>Kelly R. Albin<br>Texas Bar No. 24086079<br>Robert Lee Drinkard<br>Texas Bar No. 24007128<br>rldrinkard@rampagelaw.com<br>Mustapha Nyallay<br>Texas Bar No. 24135427<br>mmnyallay@rampagelaw.com<br>Lori W. Hanson<br>Texas Bar No. 21128500<br>lwhanson@rampagelaw.com<br>549 N. Egret Bay Blvd., Suite 200<br>League City, Texas 77573<br>Telephone: (832) 632-2102 |
| Officer Jeremiah Adebola<br>Officer Kimberly Rossell<br>Officer Marvin Perkins | *Parties have not yet made an appearance* |

/s/ Gregory Burnett
**GREGORY BURNETT**
Assistant County Attorney

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a) and Fifth Circuit Rule 28.2.3, Defendant-Appellant Sheriff Ed Gonzalez ("Gonzalez") requests oral argument. This appeal presents important questions concerning the proper application of qualified immunity and clearly established law. Defendant Gonzalez believes oral argument will greatly aid this court in resolving these important issues.

# **TABLE OF CONTENTS**

Certificate of Interested Persons .............................................................III

Statement Regarding Oral Argument ..................................................... vii

Table of Contents ............................................................................... viii

Table of Authorities ............................................................................. ix

Jurisdictional Statement ........................................................................1

Statement of The Issues ........................................................................1

Statement of The Case ..........................................................................1

    I.   Procedural History. ......................................................................1

    II.  Facts As Alleged In The Complaint. ............................................2

Summary Of The Argument .................................................................8

Argument..............................................................................................9

    I.   Analysis. ......................................................................................9

    A. Qualified Immunity. ....................................................................9

    B. Conditions Of Confinement And Episodic Acts Claim For Failure To Monitor And Understaffing Fail..................................................10

    C. Sheriff Gonzalez Cannot Be Held Liable Under Respondeat-Superior........12

    D. Sheriff Gonzalez Is Entitled To Qualified Immunity For Failure To Train/ Supervise...................................................................................13

Conclusion ..........................................................................................14

Certificate of Service ..........................................................................15

Certificate of Compliance ...................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alton v. Tex. A & M Univ.*,
 168 F.3d 196 (5th Cir. 1999).............................................................. 11

*Baldwin v. Dorsey*,
 964 F.3d 320 (5th Cir. 2020)............................................................... 10

*Bigford v. Taylor*,
 834 F.2d 1213 (5th Cir. 1988).............................................................. 12

*Brosseau v. Haugen*,
 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)........................ 10

*Cole v. Carson*,
 935 F.3d 444 (5th Cir. 2019)................................................................. 9

*Cupit v. Jones*,
 835 F.2d 82 (5th Cir. 1987).................................................................. 10

*Doe v. Taylor Indep. Sch. Dist.*,
 15 F.3d 443 (5th Cir. 1994).................................................................. 13

*Domino v. Tex. Dep't of Criminal Justice*,
 239 F.3d 752 (5th Cir. 2001)................................................................ 11

*Hare v. City of Corinth*,
 74 F.3d 633 (5th Cir. 1996).................................................................. 11

*Johnson v. Treen*,
 759 F.2d 1236 (5th Cir. 1985).............................................................. 11

*Joseph ex rel. Estate of Joseph v. Bartlett*,
 981 F.3d 319 (5th Cir. 2020)................................................................ 10

*Lively v. Theriot*,
   No. 13-2756, 2015 WL 3952159 (W.D. La. June 29, 2015) ............................ 13

*Magnolia Island Plantation, LLC v. Whittington*,
   29 F.4th 246 (5th Cir. 2022) ................................................................ 12

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ............................................................................. 1

*Morgan v. Swanson*,
   659 F.3d 359 (5th Cir. 2011) ................................................................. 9

*Mouille v. City of Live Oak*,
   977 F.2d 924 (5th Cir. 1992) ............................................................... 11

*Mullenix v. Luna*,
   577 U.S. 7, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) ........................... 9, 10

*Pearson v. Callahan*,
   555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ........................... 9

*Pineda v. City of Houston*,
   291 F.3d 325 (5th Cir. 2002) ............................................................... 13

*Roberts v. City of Shreveport*,
   397 F.3d 287 (5th Cir. 2005) ............................................................... 13

*Scott v. Moore*,
   114 F.3d 51 (5th Cir. 1997) ................................................................ 12

*Valle v. City of Houston*,
   613 F.3d 536 (5th Cir. 2010) ............................................................... 13

**Statutes**

28 U.S.C. § 1292 ................................................................................... 1

**Rules**

Fed. R. App. P. 32(a)(5) ........................................................................... 15

Fed. R. App. P. 32(a)(6) ........................................................................... 15

Fed. R. App. P. 32(a)(7)(B) ...................................................................... 15

Fed. R. App. P. 32(f) ................................................................................ 15

Fed. R. App. P. 34(a) ................................................................................. 7

Fifth Circuit Rule 32.2 ............................................................................. 15

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 because it is an appeal of an order that denied Sheriff Gonzalez's assertion of qualified immunity.[1] Gonzalez timely appealed by filing his notice of appeal within 30 days of the district court's order of September 30, 2025.[2]

## STATEMENT OF THE ISSUES

1) Whether Plaintiffs failed to plead personal involvement sufficient to overcome Sheriff Gonzalez's entitlement to qualified immunity?

2) Whether Plaintiffs failed to allege facts establishing deliberate indifference under episodic-act and conditions-of-confinement standards?

3) Whether Plaintiffs failed to plead a clearly established right violated by Sheriff Gonzalez?

4) Whether supervisory liability claims are barred?

5) Whether understaffing and monitoring theories are non-actionable policy attacks barred by Monell principles?

## STATEMENT OF THE CASE

### I.    Procedural History.

Plaintiffs Sarah Borchgrevink, representative of the Estate of Matthew Shelton, Deceased and Marianna Ruth Thomson, wrongful death beneficiary of Matthew Shelton, filed their civil rights lawsuit on August 29, 2023. ROA.26-63.

---

[1] ROA.2733-2751. *Mitchell v. Forsyth*, 472 U.S. 511 (1985)
[2] ROA.2752-2758.

On June 5, 2024, Plaintiff filed her first amended complaint adding as parties Sheriff Ed Gonzalez and numerous detention officers. ROA.793-928. On September 7, 2024, Ed Gonzalez filed his motion to dismiss Plaintiff's first amended complaint asserting he was entitled to qualified immunity. ROA.1777-1795. The district court denied the sheriff's motion to dismiss on September 30, 2025. ROA.2733-2751. The district court found that Plaintiffs had successfully pled claims against Gonzalez for the alleged violation of Shelton's constitutional rights. ROA.2750. The district court also found that Gonzalez should not be afforded qualified immunity for any claim under the facts alleged. ROA.2750-2751. Gonzalez filed a Notice of Appeal on October 14, 2025 based on qualified immunity. ROA.2752-2754.

## II.    Facts as Alleged in the Complaint.

Matthew Shelton who was a detainee at the Harris County Jail died on March 27, 2022 of diabetic ketoacidosis after not receiving insulin for more than four days. ROA.799.

Mr. Shelton surrendered to the Harris County Jail around 4:15 p.m. on March 22, 2022. ROA.801. At the time Mr. Shelton surrendered to the jail, Harris Health had recently taken over direct responsibility for medical care at the jail, effective March 1, 2022. ROA.802. During the initial intake screening, Mr. Shelton told Harris County staff he was a Type 1 diabetic and it was noted in his jail record. ROA.802. Mr. Shelton was then seen by licensed vocational nurse (LVN) Brittany

Beard who took Mr. Shelton's blood glucose which indicated only "HI" on the glucometer. ROA.802. LVN Beard flagged Mr. Shelton for further evaluation. ROA.803. Dr. Sudad Alhadad, a physician employed with Physician Resources, Inc. (PRI), evaluated Mr. Shelton and identified him as Type 1 diabetic, and determined he could be accepted for booking and his high blood glucose treated in the JPC/Harris County Jail. ROA.803. When Dr. Alhadad ordered Mr. Shelton could be accepted for booking, Dr. Alhadad only ordered single doses of both long-acting and short-acting insulin for Mr. Shelton. ROA.803. At this time, Dr. Alhadad also entered an order for medical personnel to take Mr. Shelton's blood glucose twice a day for three days, starting at 8 p.m. that night. ROA.804. Dr. Alhadad also ordered Mr. Shelton admitted into the medical clinic at the JPC rather than continue with the rest of the booking process and ordered that he be given IV fluids. ROA.806. In the JPC Clinic, nursing staff administered both short-acting and long-acting insulin and IV fluids to Mr. Shelton. ROA.806.

Dr. Alhadad left when her shift ended at 6:00 p.m. and Physician's Assistant Daesha Cuttrell-Hendrickson (PA Hendrickson) took over as Mr. Shelton's provider. ROA.806. Shortly before 6:30 p.m., registered nurse (RN) Mayra Rodriguez measured Mr. Shelton's blood glucose again and found it was 458 mg/dL, still a dangerously high reading. ROA.806. PA Hendrickson, an employee or contractee through staffing agency Vista Staffing Solutions (Vista), saw Mr. Shelton

ten minutes later, obtained information regarding his typical dosages for his short- and long-acting insulin at home, entered this information into Mr. Shelton's medical record, and ordered another single-dose injection of short-acting insulin and additional IV fluids. ROA.806. Approximately two hours later, his blood glucose had finally dropped to 108 mg/dL, a normal reading. ROA.806. At 8:59 p.m., PA Hendrickson reviewed Mr. Shelton's labs, including his blood glucose, and okayed him to be discharged from the JPC medical clinic to continue the rest of the booking process in the JPC. ROA.807.

At 3:20 a.m. on March 23, 2022, RN Benedicta Edema started Mr. Shelton's New House assessment by conducting a brief medical assessment, logging his home medications into the electronic medical record, and taking his vitals, including his blood glucose. ROA.810. Mr. Shelton's blood glucose at that time was dangerously high again, measuring 429 mg/dL. ROA.810. RN Edema sent Mr. Shelton to the JPC Clinic again on a "stat" rush. ROA.810. At 3:34 a.m., PA Hendrickson evaluated Mr. Shelton again, reviewed his vitals and blood glucose results, and again issued single-dose orders for both long-acting and short-acting insulin as well as IV fluids. ROA.810. PA Hendrickson documented this interaction and her orders for Mr. Shelton in the medical record as a "prebooking" note, not a New House assessment note. ROA.811. RN Rodriguez documented that she administered the single doses of short- and long-acting insulin ordered by PA Hendrickson at or around 3:45 a.m.

4

and started an IV shortly thereafter. ROA.811. When RN Rodriguez took Mr. Shelton's blood glucose again at 5:05 a.m., it had risen alarmingly to 505 mg/dL. ROA.811. When RN Rodriguez took Mr. Shelton's blood glucose again at 5:44 a.m., it had dropped to 335 mg/dL. ROA.811. PA Hendrickson ordered Mr. Shelton discharged from the JPC medical clinic again at 5:45 a.m. and noted in his medical record "will continue to monitor." ROA.811. The March 23rd, 3:45 a.m. single-dose orders for short- and long-acting insulin were the last times Mr. Shelton received any insulin. ROA. 813. Though PA Hendrickson had not completed a New House Assessment for Mr. Shelton, Harris Health checked the box on his intake form that it was complete. ROA.813.

Harris County classification officers specifically assigned Mr. Shelton to the 1200 Baker Street building (1200 Baker) rather than one of the other buildings in the correctional complex because he was a Type 1 diabetic. ROA.813. The 1200 Baker building houses the main Jail medical clinic. ROA.813.

In 1200 Baker, LVNs assigned to do blood glucose checks and administer insulin to diabetic detainees would be given two lists: one list of detainees to check for blood glucose only and one list of detainees to measure blood glucose and administer insulin (the insulin list). ROA.814. These lists were auto-generated by the Jail's electronic medical records system. The LVNs obtained these lists in the 1200 Baker Clinic before taking a cart containing insulin, syringes, and blood

glucose testing supplies from unit to unit in the Jail, checking blood glucose and administering insulin according to the lists. ROA.814. At that time, the cart was not equipped with a computer or tablet that would allow the LVN to check any information in a detainee's medical record while interacting with the detainee— like whether they were a Type 1 diabetic. ROA.814.

At 4:48 p.m. on March 23, 2022, LVN Charles Esapa came to the 2L1 unit to measure Mr. Shelton's blood glucose and a Harris County detention officer removed Mr. Shelton from his cell. ROA.815. Because there was no order for Mr. Shelton to receive insulin, Mr. Shelton's name was on only the blood glucose list and not the insulin list. ROA.815. LVN Esapa took Mr. Shelton's blood glucose. Mr. Shelton's blood glucose was 308 mg/dL. ROA.816. When LVN Esapa returned to the Clinic about an hour later, he logged Mr. Shelton's 308 mg/dL blood glucose result in the electronic medical record and routed the result as a message through the electronic medical record to Dr. Alhadad and the Harris County Jail Provider Pool. ROA.817. Dr. Alhadad did not work again until March 29, 2022, after Mr. Shelton died, so she did not receive notification of this blood glucose until that date as she had no access to the electronic medical record outside of the Jail and no one from Harris Health bothered to check his records. ROA.817. Accordingly, Mr. Shelton was not evaluated by a provider on the afternoon or early evening of March 23, 2022. ROA.817.

LVN Samuel Ogunsanya was assigned to the insulin cart for the overnight shift from March 23 – March 24, 2022. He printed the auto-generated blood glucose only list and the insulin list and set out with the insulin cart. ROA.818. On March 24, 2022, around 1:50 a.m., LVN Ogunsanya came to the Mr. Shelton's unit to measure Mr. Shelton's blood glucose and an unidentified Harris County detention officer again removed Mr. Shelton from his cell. ROA.818. Because there was no order for Mr. Shelton to receive insulin, his name was on only the blood glucose list and not the insulin list. ROA.818. LVN Ognsanya took Mr. Shelton's blood glucose, which was 352 mg/dL. ROA.818. When Mr. Shelton asked LVN Ogunsanya for insulin, LVN Ogunsanya told him that he was not on the list. ROA.818. Instead, LVN Ogunsanya gave Mr. Shelton a white medical pass to give to Harris County detention officers indicating that he needed to go to the Clinic. ROA.818. According to LVN Ogunsanya, at the same time he gave Mr. Shelton the pass, he also directly told the unidentified Harris County detention officer accompanying him with the insulin cart that Mr. Shelton needed to be taken to the Clinic right away. ROA.819. LVN Ogunsanya did not complete his rounds and return to the Clinic until around 3:00 a.m., an hour after he saw Mr. Shelton. At that time, LVN Ogunsanya told the Clinic charge nurse that he had given Mr. Shelton a pass to the Clinic for high blood glucose. ROA.821. LVN Ogunsanya logged Mr. Shelton's 352 mg/dL blood glucose result in his medical record at 3:21 a.m. on March 24, 2022, and added a note that

he had given Mr. Shelton a pass. ROA.822. LVN Ogunsanya also routed the blood

glucose result to Dr. Alhadad and the Harris County Jail Providers Pool. ROA.822.

From March 26, 2022 until March 27, 2022 Plaintiffs allege that several Harris

County Detention Officers logged into CorreTrak and failed to properly do

observation rounds of Mr. Shelton's cell. ROA.831-843. At 3:42 p.m., Defendant

Detention Officer Lauder entered Mr. Shelton's cell. ROA.844. After poking him

with the panhole key, she touched Mr. Shelton's right side and found him cold to the

touch and not breathing. ROA.844.

## SUMMARY OF THE ARGUMENT

Plaintiffs did not plead facts showing that Sheriff Gonzalez personally knew

of, disregarded, or caused a substantial risk of serious harm to decedent, Matthew

Shelton. Instead, Plaintiffs rely on collective, conclusory, *Monell*-style accusations

repackaged as individual-capacity claims. Supervisory officials are not liable absent

personal, subjective awareness. Understaffing and monitoring failures are policy-

level *Monell* claims, not individual liability. Failure to train/supervise claims require

pattern, causation, subjective awareness. No clearly established law would have put

Sheriff Gonzalez on notice that generalized jail-management decisions violate

constitutional law. The district court's denial of qualified immunity therefore must

be reversed.

# ARGUMENT

## I.     Analysis.

### A.     Qualified Immunity.

Qualified-immunity denials are reviewed de novo. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citation omitted).

We are bound by the restrictive analysis of "clearly established" set forth in numerous Supreme Court precedents. A right is "clearly established" if it is "one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks and citation omitted). Courts must not "define clearly established law at a high level of generality"; instead, their "inquiry must be undertaken in light of the specific context of the case." *Id*. at 12, 136 S.Ct. 305 (internal quotation marks and citations omitted). Therefore, unless existing precedent "squarely governs" the conduct at issue, an official will be entitled to qualified immunity. See *Brosseau v. Haugen*, 543 U.S. 194, 201, 125

S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); *Mullenix*, 577 U.S. at 12, 136 S.Ct. 305 (emphasizing that "[t]he *205 dispositive question is whether the violative nature of particular conduct is clearly established" (internal quotation marks and citation omitted)).

Generally, to satisfy this standard, the plaintiff must "identify[ ] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and ... explain[ ] why the case clearly proscribed the conduct of that individual officer." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (concluding the defendants were entitled to qualified immunity because the plaintiffs failed to identify an analogous case). While an exact case on point is not required, the confines of the officers' violation must be "beyond debate." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (internal quotation marks and citation omitted), cert. denied, —— U.S. ——, 141 S. Ct. 1379, 209 L.Ed.2d 123 (2021) (mem.). Broad general propositions are not enough to overcome qualified immunity. *Id.*

## B.     Conditions of Confinement and Episodic Acts Claim for Failure To Monitor and Understaffing Fail.

Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. *Cupit v. Jones*, 835 F.2d 82, 84–85 (5th Cir. 1987). To succeed in a § 1983 action based on "episodic acts or omissions" in violation of Fourteenth Amendment rights, a pretrial detainee must show subjective deliberate indifference

by the defendants. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)..

That is, the plaintiff must show that the official knew of and disregarded a substantial risk of serious harm. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). To reach the level of deliberate indifference, official conduct must be "wanton," which is defined to mean "reckless." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Under § 1983, officials are not vicariously liable for the conduct of those under their supervision. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff. *Id.*

Plaintiffs failed to allege facts supporting an inference of deliberate indifference by Sheriff Gonzalez. Plaintiffs' allegations that Sheriff Gonzalez created unconstitutional policies are conclusory and unsupported by plausible facts. ROA.875-880. Plaintiffs had to plead that Sheriff Gonzalez personally knew Mr. Shelton faced a substantial risk of serious harm and consciously disregarded it. Plaintiffs did not.

Conditions claims challenge systemic jail conditions, which are *Monell* claims — not individual ones. Our precedent suggests that municipalities, not individuals, should generally be held liable for city policies. See *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997). Thus, at the time of the Shelton's death, no clearly established precedent suggested that Gonzalez could be liable under an episodic-acts theory for staffing the jail in line with Harris County's budget and policies. Plaintiffs have cited no case law providing that jailers must deviate from the typical staffing procedures if they believe that a detainee has a chronic medical condition such as Type 1 diabetes. Because the law is not clearly established, the district court erred in not granting Gonzalez qualified immunity on these claims.

**C.    Sheriff Gonzalez cannot be held liable under respondeat-superior.**

Section 1983 does not impose vicarious or respondeat-superior liability." *Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988)). Therefore, an official, like the Sheriff, "cannot be held liable in his individual capacity merely because a subordinate committed some constitutional violation." *Id*.

The amended complaint has no facts that Sheriff Gonzalez knew of Mr. Shelton's condition, made medical decisions, denied care, or was present at any critical time.

12

**D.    Sheriff Gonzalez is entitled to qualified immunity for failure to train/ supervise.**

For supervisors not personally involved in the alleged constitutional violations, the legal elements of an individual's supervisory liability and a municipality's liability for failure to train and/or supervise are similar enough such that the same analysis applies to both individual and official capacity claims. See *Lively v. Theriot*, No. 13-2756, 2015 WL 3952159, at *9 n.7 (W.D. La. June 29, 2015) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–54 nn.7–8 (5th Cir. 1994)) (en banc); see also *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("The standard applicable to failure to train allegations against supervisors is based on that for municipal liability." (citing *Doe*, 15 F.3d at 452–54 and nn.7–8)).

Plaintiff must plead (1) a pattern of similar violations; (2) Sheriff Gonzalez's subjective knowledge; (3) a causal link; and (4) deliberate indifference. *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002); *Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010). Plaintiff has pled no pattern, notice, causation, or claim showing Gonzalez acted with deliberate indifference to establish policies that denied glucose monitoring and insulin administration to detainees such as Matthew Shelton. Plaintiffs' allegations that Gonzalez acted with deliberate indifference are conclusory and unsupported by plausible facts. ROA.632-636. The district court erred in not granting Gonzalez qualified immunity on these claims.

## <u>CONCLUSION</u>

Because Plaintiffs failed to plead personal involvement, deliberate indifference, or violation of clearly established law, Sheriff Gonzalez is entitled to qualified immunity.  The district court's denial of qualified immunity should be reversed and rendered.

*/s/  Gregory Burnett*
**GREGORY BURNETT**

## CERTIFICATE OF SERVICE

I certify that on January 14, 2026, I filed a true and correct copy of the foregoing brief via the Court's CM/ECF system, which will automatically serve a copy on all parties' counsel.

Appellate and Trial Counsel:
Jeff Edwards
Lisa Snead
603 W. 17th Street
Austin, Texas 78701
jeff@edwards-law.com
lisa@edwards-law.com

*/s/  Gregory Burnett*
**GREGORY BURNETT**
Assistant County Attorney

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limit of Fifth Circuit Rule 32.2 and Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3060 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, in Times New Roman 14-point typeface, except for footnotes, which are in Times New Roman 12-point typeface. Case names are italicized or underlined.

*/s/  Gregory Burnett*
**GREGORY BURNETT**
Assistant County Attorney